IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PAMELA A. HAAS,                         )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )    1:09CV1016
                                        )
GOLDING TRANSPORT INC.,                 )
                                        )
            Defendant.                  )

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court pursuant to the parties' joint request for entry of a "Consent Protective Order." More specifically, in their Joint Rule 26(a) Report, the parties included the following provision:

> 7. <u>Confidential information</u>. The parties anticipate that, during discovery, they will exchange confidential personal and proprietary materials. Consequently, the parties propose that the Court enter the attached Consent Protective Order to facilitate the exchange and use of confidential materials in connection with this litigation.

(Docket Entry 9 at 4.) The Court approved the parties' Joint Rule 26(a) Report in all respects, except that it deferred any ruling on the proposed Consent Protective Order. (Docket Entry 10.)

For the reasons that follow, the Court will not enter the Consent Protective Order as drafted by the parties at this time, but instead will permit the parties to submit an amended version that addresses the matters discussed herein or to brief the reasons why the existing proposal complies with controlling authority.

<u>Background</u>

Plaintiff brought this action asserting claims of sex discrimination and retaliation in employment in violation of 42

U.S.C. §§ 2000e et seq., deprivation of Family Medical Leave Act benefits in violation of 29 U.S.C. §§ 2601 et seq., and wrongful discharge in violation of N.C. Gen. Stat. § 143-422.2, against Defendant. (Docket Entry 1.) In support of those claims, Plaintiff alleged in relevant part the following:

> 16. At all times relevant, Defendant employed the Plaintiff as a full time truck driver.
>
> 17. In September, 2008, a male co-worker made sexual advances toward the Plaintiff. He also made vulgar and demeaning sexual comments to the Plaintiff. He also touched the Plaintiff in a sexual manner.
>
> 18. The Plaintiff consistently rejected his advances and told him to stop. He did not stop. The advances and demeaning sexual comments happened every day for one week.
>
> 19. The Plaintiff complained to the Defendant's managers; but, nothing changed. After she complained, the male co-worker threatened the Plaintiff.
>
> 20. The Plaintiff complained again to the Defendant's managers. After her second complaint, the Defendant's managers suspended the Plaintiff for one week without pay.
>
> 21. The Defendant's managers assigned this male co-worker to work with the Plaintiff even though they knew that he had a history of harassing and threatening other employees.
>
> 22. In October, 2008, the Plaintiff went on company approved medical leave for unrelated surgery.
>
> 23. During the Plaintiff's medical leave, the company stopped paying her health insurance premiums. The Plaintiff complained about this to the Defendant's managers.
>
> 24. In January, 2009, the Plaintiff's doctor notified the Defendant's managers that the Plaintiff was able to return to work. Defendant refused to allow the Plaintiff to return to full time work.
>
> 25. Similarly situated male employees have gone on medical leave and were returned to full time work.

26. Upon information and belief, the company paid the health insurance premiums for similarly situated male employees when they went on medical leave.

27. Upon information and belief, the Plaintiff's position remains open or has been filled by a male.

28. At all times the Plaintiff's work performance met the Defendant's reasonable expectations.

29. At all times relevant, the Defendant's managers knew about the sexual harassment the Plaintiff suffered.

30. The Defendant's discriminatory and retaliatory conduct caused the Plaintiff economic loss, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

(Docket Entry 1 at 3-5.) Plaintiff seeks both "compensatory and punitive damages," as well as equitable relief. (Id. at 12.)

Defendant has denied all of Plaintiff's allegations that would tend to suggest any wrongful conduct on its part as follows:

16. Defendant admits that the Company employed plaintiff as a truck driver from June 22, 2004 until January 12, 2004 [sic]. Except as specifically admitted, defendant denies the allegations contained in paragraph 16 of the Complaint.

17. Defendant denies the allegations contained in paragraph 17 of the Complaint.

18. Defendant denies the allegations contained in paragraph 18 of the Complaint.

19. Defendant admits that plaintiff informed the Company's Vice President Ellery Golding in September 2008 that she and her co-worker Jeffrey Berry had "conflicts" while they were driving a route together, and that this was the last occasion on which the Company assigned plaintiff and Mr. Berry to drive a route together. Except as specifically admitted, defendant denies the allegations contained in paragraph 19 of the Complaint.

20. Defendant admits that, in or about October 2008, plaintiff made another report to Mr. Golding about Mr. Berry's conduct, this time stating that Mr. Berry had threatened her and made demeaning sexual comments to her

when they had last driven a route together in September 2008. Except as specifically admitted, defendant denies the allegations contained in paragraph 20 of the Complaint.

21. Defendant admits that, at plaintiff's request, she was paired with Mr. Berry on certain assigned routes in September 2008. Except as specifically admitted, defendant denies the allegations contained in paragraph 21 of the Complaint.

22. Defendant admits that on October 20, 2008, plaintiff began an approved medical leave of absence for a surgical procedure that was unrelated to her job. Except as specifically admitted, defendant denies the allegations contained in paragraph 22 of the Complaint.

23. Defendant denies the allegations contained in paragraph 23 of the Complaint.

24. Defendant admits that the Company received a doctor's note dated January 13, 2009 stating that plaintiff would be able to return to work on January 23, 2009. Except as specifically admitted, defendant denies the allegations contained in paragraph 24 of the Complaint.

25. Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegations concerning the unidentified male employees referenced in paragraph 25 of the Complaint and therefore denies the same. Defendant further denies plaintiff's generalized assertion that the Company treated similarly situated male employees more favorably than plaintiff.

26. Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegations concerning the unidentified male employees referenced in paragraph 26 of the Complaint and therefore denies the same. Defendant further denies plaintiff's generalized assertion that the Company treated similarly situated male employees more favorably than plaintiff.

27. Defendant admits that the Company continues to employ male and female drivers in the same job position previously held by plaintiff.

28. Defendant denies the allegations contained in paragraph 28 of the Complaint.

29. Defendant denies the allegations contained in paragraph 29 of the Complaint.

30. Defendant denies the allegations contained in paragraph 30 of the Complaint.

(Docket Entry 6 at 4-6.)

As justification for the entry of the proposed Consent Protective Order, the parties offer the following:

> In the course of discovery, the parties will request and exchange information and documents that are or may be of a personal and/or of a proprietary nature, including but not limited to personnel records, tax returns and financial information, medical records and materials related to employee benefits, as well as confidential commercial information and trade secrets, competitively sensitive commercial information, customer data and other personal or financial information regarding third parties. The parties seek to limit the use of the information and documents to protect themselves from annoyance and potential embarrassment as well as to maintain the confidentiality of personal and/or proprietary information. Accordingly, they have agreed to the entry of this Consent Protective Order ("Order") to facilitate the production of the information requested and any information which has been or will be produced during discovery in this case.

(Docket Entry 9 at Attach., p. 1.)

According to the proposed Consent Protective Order:

> "Confidential information" as used herein means any type or classification of information which is designated as "confidential" in the manner specified below, in the good faith belief that such information falls within the scope of Rule 26(c) of the Federal Rules of Civil Procedure and is subject to this Order. For purposes of this Order, "confidential information" means proprietary, business, commercial, financial and/or personal information, including but not limited to employee personnel files, pay information, medical records, drug testing documents, workers' compensation files, corporate policies and procedures, trade secrets and other competitively sensitive materials, financial records, actuarial records and reports and information about disabilities, tax returns, retirement benefits, customer information, and other personal or financial information relating to third parties. "Confidential information" may include documents, information contained in documents, depositions, interrogatory answers, and all other discovery pursuant to the Federal Rules of Civil

> Procedure, <u>court testimony, matters in evidence</u> and other information furnished by or on behalf of any party in connection with this litigation which falls within the scope of this Order.

(<u>Id.</u> at Attach, p. 2 (emphasis added).)

The parties further proposed that, as each side provided information to the other during discovery, the producing party could use "discretion in designating materials to be confidential information . . . [conditioned by an] obligat[ion] to designate only documents or information which it believes in good faith to be information within the scope of Rule 26(c)[,] . . . to make specific designations to the extent reasonably possible and to avoid overbroad designations." (<u>Id.</u>) The proposed Consent Protective Order declared that these confidentiality designations would stand unless the Court ordered otherwise pursuant to a motion from a party challenging a designation. (<u>Id.</u> at Attach., p. 6.)

In addition to setting conditions on the circumstances under and manner by which they might use confidentially-designated materials (<u>id.</u> at Attach., pp. 3-5), the parties proposed the following:

> **Information Filed with the Court**
> 7. When a party seeks to file under seal confidential documents, things, and/or information, including confidential portions of any transcript, a party shall submit such materials to the court in a sealed envelope or other appropriately sealed container, which covering shall be endorsed with the title of this action and a statement substantially in the following form: "Filed Under Seal Pursuant to Protective Order." Said envelope or container shall not be opened without further order of the Court except by inspecting counsel who, after same is opened, shall return the document to the Clerk in a sealed envelope or container.

(Id. at Attach., p. 5.) The proposed Consent Protective Order does not address what, if any, justification the parties would submit to the Court with materials marked "Filed Under Seal Pursuant to Protective Order." Nor does it explain how any "confidentiality" designation imposed by a party could restrict disclosure of "court testimony" or "matters in evidence" in the absence of affirmative action by the Court.

## Discussion

Under the Federal Rules of Civil Procedure ("the Rules"), "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Such "[l]iberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984).

"The Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach." Id. at 30. "Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery." Id. at 35. "Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties." Id. at 30. See also id. at 35 (noting that discovery

-7-

"may seriously implicate privacy interests of litigants and third parties . . . [because] [t]he Rules do not distinguish between public and private information").

"Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c)." Id. Said provision states in relevant part that:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
>
> . . . .
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
> . . . .
>
> (F) requiring that a deposition be sealed and opened only on court order;
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way; and
>
> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c).[1]

---

[1] "Although [Rule 26(c)] contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." Seattle Times, 467 U.S. at 35 n.21.

As noted above, the discovery process is intrusive; "[i]t is not surprising, therefore, that issuance of protective orders in civil litigation has become almost routine." In re Grand Jury Subpoena, 836 F.2d 1468, 1477 (4th Cir. 1988).[2] Often, as in this case, rather than seeking protective orders each time the need arises, "parties agree[] to a 'blanket' protective order that permit[s] them to designate documents containing confidential business information." Longman v. Food Lion, Inc., 186 F.R.D. 331, 333 (M.D.N.C. 1999). See also Factory Mut. Ins. Co. v. Insteel Indus., Inc., 212 F.R.D. 301, 303-04 (M.D.N.C. 2002) (describing "'blanket' protective order [as one that] 'permits the parties to protect documents that they in good faith believe contain trade secrets or other confidential commercial information'" (quoting Bayer AG and Miles, Inc. v. Barr Labs., Inc., 162 F.R.D. 456, 463-64 (S.D.N.Y. 1995)); Parkway Gallery Furniture, Inc. v. Kittinger/ Pennsylvania House Group, Inc., 121 F.R.D. 264, 267-68 (M.D.N.C. 1988) (noting that "[b]lanket or umbrella protective orders are becoming increasingly common as large scale litigation involves more massive document exchanges").

Courts regularly enter such orders either "without a showing of good cause, [in which case] the party who later seeks to keep information confidential will bear the burden of showing good

---

[2] The United States Court of Appeals for the Fourth Circuit has found no fault with this development, but instead has recognized that protective orders "aid the civil courts in facilitating resolution of private disputes." Id. at 1472. See also In re Krynicki, 983 F.2d 74, 75 (7th Cir. 1992) ("Protective orders entered during discovery in civil cases . . . promote[] disclosure: parties having arguable grounds to resist discovery are more likely to turn over their information if they know that the audience is limited . . . .").

cause," or "based on a general 'good cause' determination." Longman, 186 F.R.D. at 333. See also Parkway Gallery, 121 F.R.D. at 268 (observing that "showing of good cause to believe that discovery will involve confidential or protected information . . . may be done on a generalized as opposed to a document-by-document basis"). This Court, per now-Chief Judge James A. Beaty, Jr., has found that, in some cases, such as ones "involv[ing] hundreds of documents containing confidential business information that Defendants feared could be used by Defendants' competitors to gain a business advantage," an agreed-upon, blanket protective order "arrangement [i]s essential to the efficient functioning of the discovery process . . . ." Longman, 186 F.R.D. at 333.

Given the foregoing authority, the Court concludes that blanket protective orders constitute an appropriate means for dealing with privacy and related concerns. The Court further finds that the parties' representations in their Joint Rule 26(f) Report and proposed Consent Protective Order, viewed in light of the underlying allegations in the Complaint and Answer, provide a generalized showing of good cause warranting entry of such an order in this case. In particular, the Court notes that: 1) this case includes allegations of unwanted sexual advances which the parties likely will explore in detail during discovery; 2) because of the employment setting of the case, the parties may well examine the personnel records and activities of third-parties for comparative purposes as part of any liability-related discovery; and 3) given the Medical Leave Act claim and the relief sought (including

compensation for emotional harm and punitive damages), the parties likely will pursue discovery of medical and financial information. These subject areas implicate privacy and other interests of the sort Rule 26(c) exists to protect. The Court further concludes that, although some of the proposed Consent Protective Order's language from the definition of "confidential information" is broad, said definition suffices because it remains tied at its core to the terms of Rule 26(c) and limits the parties to confidentiality designations that they believe in good faith fall within the coverage of said provision.

However, two aspects of the proposed "Consent Protective Order," the paragraph regarding sealing of documents filed with the Court and the portion of the definition of "Confidential Information" referencing "court testimony" and "matters in evidence," raise a number of issues. As to the former, the parties' proposal creates an impression that, without making any showing, the parties may file any document with the Court under seal, simply by presenting such item(s) to the Clerk in an envelope marked "Filed Under Seal Pursuant to Protective Order." The latter language suggests that the parties can restrict disclosure of testimony and other evidence offered in open court merely by choosing to designate certain information "confidential." Neither scenario appears to comport with controlling authority.

"The operations of the courts and the judicial conduct of judges are matters of utmost public concern." <u>Landmark Communications, Inc. v. Virginia</u>, 435 U.S. 829, 839 (1978). As a

result, "the courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978). See also Columbus-America Discovery Group v. Atlantic Mut. Ins. Co., 203 F.3d 291, 303 (4th Cir. 2000) ("Publicity of such records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case. It is hardly possible to come to a reasonable conclusion on that score without knowing the facts of the case."); In re Krynicki, 983 F.2d 74, 75 (7th Cir. 1992) ("Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat; this requires rigorous justification.").[3]

"The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." Virginia Dept. of State Police v. The Washington Post, 386 F.3d 567, 575 (4th Cir. 2004). "While the common law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents." Stone v. University of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988) (internal citation omitted). See also Rushford v. The

---

[3] The right of access to court records flows from the right of access to in-court proceedings; it applies in both civil and criminal cases. See Rushford v. The New Yorker Magazine, Inc., 846 F.2d 249, 253 & n.4 (4th Cir. 1988).

New Yorker Magazine, Inc., 846 F.2d 249 (4th Cir. 1988) (ruling that First Amendment access right applies to summary judgment motion attachments). "The distinction between the rights of access afforded by the common law and the First Amendment is significant, because the common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." Virginia Dept. of State Police, 386 F.3d at 575 (internal citations and quotation marks omitted). As a result, "different levels of protection may attach to the various records and documents involved in [a] case." Stone, 855 F.2d at 180.[4]

---

[4] "The common law presumption of access may be overcome if competing interests outweigh the interest in access . . . . Where the First Amendment guarantees access, on the other hand, access may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." Stone, 855 F.2d at 180 (emphasis added). The United States Supreme Court has identified the following examples of "competing interests" that courts have found sufficient to overcome the common law right of access: 1) the interest in "insur[ing] that [court] records are not used to gratify private spite or promote public scandal [such as] through the publication of the painful and sometimes disgusting details of a divorce case"; 2) the interest in precluding the use of court "files to serve as reservoirs of libelous statements for press consumption"; and 3) the interest in preventing court files from becoming "sources of business information that might harm a litigant's competitive standing." Nixon, 435 U.S. at 598. Although the common-law access balance thus clearly accounts for interests associated with non-governmental litigants and/or third-parties, it is not clear how such interests fit into the First Amendment access analysis, given that test's use of the term "governmental interest." In other words, in the context of a civil case involving non-governmental litigants and/or third-parties, how does one define or discern a "governmental interest"? Does the government have an interest in the vindication of an individual's right to personal privacy or a business's right to freedom from unfair competitive disadvantage? Some courts have addressed this conundrum by substituting the notion of "higher value" for "governmental interest" in such contexts. See Level 3 Communications, LLC v. Limelight Networks, Inc., 611 F. Supp. 2d 572, 580-83 (E.D. Va. 2009) (discussing cases that cited right to privacy, property right in trade secrets, privilege against disclosure of attorney-client communications, and duties created by contract as "private" interests that might overcome First Amendment right of access). In at least two decisions (one published, one not), the Fourth Circuit has endorsed the position that a private business's interests can overcome both the common law and the
(continued...)

The distinction between constitutional and common law access only becomes relevant, however, if the materials at issue actually constitute "judicial documents and records," Stone, 855 F.2d at 180. In this regard, the United States Court of Appeals for the Fourth Circuit (albeit in an unpublished opinion) has joined other courts in "hold[ing] that the mere filing of a document with a court does not render the document judicial." In re Policy Mgt. Sys. Corp., 67 F.3d 296, 1995 WL 541623, at *4 (4th Cir. Sept. 13, 1995) (unpublished) (citing United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995), in concluding "that a document becomes a judicial document when a court uses it in determining litigants' substantive rights"). Accord United States v. Blowers, Nos. 3:05CR93-V, 3:02CR93-V, 2005 WL 3830634, at *3 (W.D.N.C. Oct. 17, 2005) (Tilley, C.J.) ("Although the definition of the term 'judicial documents' is not entirely settled, 'there appears to be agreement that it does not arise from the mere filing of papers or documents, but only those used, submitted, or relied upon by the court in making its decision.'" (quoting Smithkline Beecham Corp. v. Synthon Pharm., Ltd., 210 F.R.D. 163, 167 (M.D.N.C. 2002))).

Accordingly, in any given case, some court-filed "documents fall within the common law presumption of access, while others are

---

⁴(...continued)
First Amendment rights of access without addressing this "governmental interest" question. See Columbus-America, 203 F.3d at 303 (reversing order "unsealing the list of the inventory of the recovered treasure" awarded to litigant because "value of the inventory may be damaged by premature release of the inventory"); Woven Elec. Corp. v. Advance Group, Inc., 930 F.2d 913, 1991 WL 54118, at *6 (4th Cir. May 6, 1991) (unpublished) (ruling that district court could have closed courtroom and could seal record to protect trade secrets).

subject to the greater right of access provided by the First Amendment. Still others may not qualify as 'judicial records' at all." United States v. Moussaoui, 65 Fed. Appx. 881, 889 (4th Cir. 2003) (citing Amodeo, 44 F.3d at 145-46).

In light of this legal framework, "[w]hen presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements. As to the substance, the district court first must determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." Virginia Dept. of State Police, 386 F.3d at 576 (internal citations and quotation marks omitted). See also Moussaoui, 65 Fed. Appx. at 889 ("We therefore must examine [materials submitted under seal] document by document to determine, for each document, the source of the right of access (if any such right exists). As to those documents subject to a right of access, we must then conduct the appropriate balancing to determine whether the remainder of the document should remain sealed, in whole or in part. The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access." (internal citation omitted)). Procedurally:

> [The district court] must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing. Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review.

Virginia Dept. of State Police, 386 F.3d at 576 (internal citation omitted).

As noted above, the parties' proposed "Consent Protective Order" appears to authorize the filing of any document under seal via the mere presentation of such document to the Clerk's Office in an envelope marked "Filed Under Seal Pursuant to Protective Order." It also seems to endorse the notion that the parties could restrict disclosure of "court testimony" and "matters in evidence" simply by designating such items as "confidential." Because the parties' proposal in these respects apparently pretermits the filing of a motion to seal (and supporting brief), it is not clear how the Court could carry out the Fourth Circuit's procedural requirements of "consider[ing] less drastic alternatives to sealing" and "stat[ing] reasons for (and specific supporting findings) for its decision [to seal] and the reasons for rejecting alternatives to sealing," id.[5] Nor, under any such scenario, could the Court readily discharge its "substantive" duty to "determine the source of the right of access with respect to each document, . . . [and] accurately weigh the competing interests at stake," id. In addition, without guidance from the parties in the form of a motion to seal, the Court might lack sufficient information to assess whether materials at issue qualify as "judicial records" subject to

---

[5] The Court will assume that, through appropriate docketing, the parties' proposal could meet the "public notice" element of the "procedural" portion of the Fourth Circuit's sealing standard. See generally Stone, 855 F.2d at 181 (discussing use of docketing to comply with "public notice" requirement).

any right of access.  See Moussaoui, 65 Fed. Appx. at 889; In re Policy Mgt. Sys. Corp., 1995 WL 541623, at *4.[6]

Moreover, several recent decisions from district courts in the Fourth Circuit (including an opinion from a judge of this Court) call into question the notion, inherent in the parties' proposal, that the provisions of Rule 26(c) afford an alternative to strict compliance with the Fourth Circuit's otherwise applicable sealing regimen.  See, e.g., Hill Holiday Connors Cosmopulos, Inc. v. Greenfield, No. 6:08-CV-03980-GRA, 2010 WL 890067, at *1-4 (D.S.C. Mar. 8, 2010) (noting that court "denied a motion to amend the Protective Order that would have eliminated the requirement of following the sealing process under the applicable rules" and proceeding to deny motions to seal for failure to satisfy the Stone standard); Walhonde Tools, Inc. v. Allegheny Energy, Inc., Civil Action No. 2:06-0537, 2008 WL 4509365, at *1-2 (S.D.W. Va. Sept. 30, 2008) (applying Virginia Dept. of State Police/Stone/Rushford test in denying plaintiffs' unopposed motion "requesting leave to file under seal six exhibits attached to their motion for summary judgment . . . [where] plaintiffs assert[ed] that the documents at issue have been designated as confidential pursuant to protective orders"); Walter Kidde Portable Equip., Inc. v. Universal Security Instruments, Inc., No. 1:05CV01031, 2008 WL 451568, at *1-2 (M.D.N.C. Jan. 16, 2008) (Tilley, J.) (ordering plaintiff to show cause why the court should not deny "its motion for leave to file

---

[6] Finally, the procedure proposed by the parties does not appear to follow the directives for filing sealed documents in the Court's CM/ECF User's Manual.

-17-

under seal pursuant to Federal Rule of Civil Procedure 26(c)(7) . . . [because] when this discovery rule is applied to seal documents used in trial or in dispositive motions, such as [plaintiff's] motion for summary judgment, a 'rigorous First Amendment standard' applies to protect the public's right to access . . . [and] Court ha[d] insufficient information to use the procedure prescribed by the Fourth Circuit to weigh the competing interests" (internal citation omitted) (quoting Virginia Dept. of State Police)); Hall v. United Air Lines, Inc., 296 F. Supp. 2d 652, 679-80 (E.D.N.C. 2003) (ordering unsealing of documents filed under seal pursuant to protective order unless parties filed "a brief complying with the Fourth Circuit's mandate, demonstrating the necessity and propriety of sealing information" and observing that, in entering protective order prospectively authorizing sealed filings, "magistrate judge did not review the motion in accordance with the mandatory procedure outlined by the Fourth Circuit in Stone" (internal brackets, ellipses, and quotation marks omitted)).[7]

## Conclusion

Under these circumstances, the Court will not enter the proposed "Consent Protective Order" as currently drafted. Instead,

---

[7] Conversely, the Court has not identified any authority from the Fourth Circuit or district courts in the Fourth Circuit expressly holding that prospective sealing provisions of the sort proposed in this case comply with the requirements laid out in Virginia Dept. of State Police, Stone, and Rushford. The "Confidentiality Order" in Longman included a prospective sealing provision, but the Court did not examine the merits of the common law or First Amendment access arguments in that case because the party seeking to raise those claims had waived the opportunity to do so. Longman, 186 F.R.D. at 332-35.

the Court will afford the parties an opportunity: 1) to submit an "Amended Consent Protective Order" addressing the concerns outlined herein; or 2) to file a motion for reconsideration and supporting brief setting out argument and/or authority showing that the existing proposal complies with controlling precedent (and comports with CM/ECF User's Manual directives). If they choose the former option, the parties: 1) may strike the references to "court testimony" and "matters in evidence" from the definition of "Confidential Information" and omit the paragraph regarding sealed court filings all together; or 2) they may revise those aspects of their proposal. To the extent that any such revised version continues to provide prospectively for the filing of documents under seal or the sealing of in-court testimony and evidence, the parties: 1) shall re-caption the proposal as "Consent Protective Order and Prospective Sealing Order"; and 2) shall incorporate into said proposed order a description of the court filings covered by the prospective sealing provision (e.g., discovery-related motions, dispositive motions, etc.), a statement explaining the need for any sealing (including why alternatives would not suffice), and references to applicable case law.[8]

---

[8] The Court foresees that, because "[a] party moving to seal documents filed in support of a motion for summary judgment in a civil case bears a heavy burden," Jennings v. University of N.C. at Chapel Hill, 340 F. Supp. 2d 679, 681 (M.D.N.C. 2004), fashioning a prospective sealing provision for filings of that sort will be difficult. However, given the existence of significant authority indicating that "[t]he better rule is that material filed with discovery motions is not subject to the common-law right of access," Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1312 (11th Cir. 2001), it is easier to envision a prospective sealing provision limited to such motions. See also Pintos v. Pacific Creditors Ass'n, 565 F.3d 1106, 1115 (9th Cir. 2009) ("'[G]ood
(continued...)

**IT IS THEREFORE ORDERED** that the parties' request that the Court enter the "Consent Protective Order" attached to their Joint Rule 26(f) Report (Docket Entry 9 at Attach.) is DENIED.

**IT IS FURTHER ORDERED** that the parties may submit an "Amended Consent Protective Order" that addresses the matters discussed in this Memorandum Opinion and Order or, alternatively, may file a motion for reconsideration asking the Court to enter the "Consent Protective Order" as drafted, with a supporting brief that demonstrates the propriety of the original proposal.

        /s/ L. Patrick Auld
          **L. Patrick Auld**
    **United States Magistrate Judge**

March 26, 2010

---

[8](...continued)
cause' is also the proper standard when a party seeks access to previously sealed discovery attached to a nondispositive motion."); Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 165 (3d Cir. 1993) ("[W]e hold there is a presumptive right to public access to all material filed in connection with nondiscovery pretrial motions . . ., but no such right as to discovery motions and their supporting documents."); Anderson v. Cryovac, Inc., 805 F.2d 1, 10 (1st Cir. 1986) ("Although we agree that the public has a right of access to some parts of the judicial process, we conclude that this right does not extend to documents submitted to a court in connection with discovery proceedings."). Cf. In re Policy Mgt. Sys. Corp., 1995 WL 541623, at *4 (stating "that a document becomes a judicial document when a court uses it in determining litigants' substantive rights" (emphasis added)).